MEMORANDUM *
Central Montana Wildlands Association appeals the district court’s grant of summary judgment in favor of the Forest Service, asserting that the district court *86 erred by rejecting the Association’s claims that the Forest Service violated the National Environmental Policy Act and Montana Wilderness Study Act of 1977, Pub.L. No. 95-150, 91 Stat. 1243 (1977). The Association challenges a 2002 Travel Management Plan, as modified by a 2004 Winter Recreation Agreement and a summer use settlement agreement. Over a half-dozen different groups, representing environmentalists, recreationists, and industry, were parties to the Winter Agreement. In a truly unusual move, two of those groups, Montana Snowmobile Association and Montana Wilderness Association, which are often at odds with one another, both intervened in this appeal on behalf of the Forest Service.
We have jurisdiction pursuant to 28 U.S.C. § 1291. We will set aside the Forest Service’s decision under the Administrative Procedure Act only if it is “arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.” 5 U.S.C. § 706(2)(A); Lands Council v. McNair, 537 F.3d 981, 987 (9th Cir.2008) (en banc). We review the NEPA claim to determine whether the Forest Service took a “hard look” at the environmental consequences of the plan, reasonably evaluated the relevant factors, and provided a “convincing statement of reasons” for its decision. Ocean Advocates v. U.S. Army Corps of Eng’rs., 402 F.3d 846, 864 (9th Cir.2005); Wetlands Action Network v. U.S. Army Corps of Eng’rs., 222 F.3d 1105, 1114 (9th Cir.2000).
The Association argues that the modified Travel Plan violates the Montana Wilderness Study Act’s requirement that the Forest Service maintain the 1977 wilderness character of the study area. However, contemporaneous maps and documents support the Forest Service’s factual conclusions that the study area contained 32.4 miles of road and 38.6 miles of trail in 1977 and that the roads and trails were used by motorized vehicles. The modified Travel Plan substantially limits motor vehicle access compared to 1977 levels. Summer vehicles can access only 1.5 miles of road, below even the Association’s estimate of 1977 access. Snowmobiles are now allowed access to a concentrated area that equals 15% of the study area, less than the 21% access allowed throughout the study area in 1977. As the district court concluded, the other parties involved in this case “effectively crafted” a settlement to preserve the wilderness character of the study area.
The Association’s assertion that the Forest Service used flawed methodology is not supported by the record. The Congressional Report and Clark statement do not create substantial uncertainty about the wilderness character of the area. Nor is the Travel Plan, which eliminates most motorized travel in the area during the summer and substantially reduces winter travel, either highly controversial or highly ■uncertain. The Forest Service took a hard look at the 1977 wilderness character of the study area and each of the wilderness characteristics, explained its methodology, cited evidence in the record, and adequately assessed the specific wilderness characteristics and regulatory factors for each Travel Plan alternative.
The Forest Service also took a hard look at potential enforcement problems with the Travel Plan. The Forest Service considered past enforcement problems, responded to public comments, and adequately explained how it would enforce the new restrictions. The Winter Agreement added enforcement, monitoring, and made provisions for the cooperation of the numerous parties.
AFFIRMED.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.